UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PENOBSCOT INDIAN NATION,<br>PENOBSCOT INDIAN NATION ENTERPRISES, and<br>GLOBAL DIRECT SALES, LLC,<br><br>          Plaintiffs,<br><br>          v.<br><br>UNITED STATES DEPARTMENT OF HOUSING AND<br>URBAN DEVELOPMENT, *et al.*,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 07-1282 (PLF)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Defendants United States Department of Housing and Urban Development ("HUD"), Alphonso Jackson, Secretary of Housing and Urban Development, Roy A. Bernardi, Deputy Secretary of Housing and Urban Development, and Brian Montgomery, Assistant Secretary of Housing and Urban Development and Commissioner of the Federal Housing Administration respectfully oppose Plaintiffs' Motion for Partial Summary Judgment.

In short, Plaintiffs' motion should not be granted because Plaintiffs' First Cause of Action is faulty as a matter of law and should be dismissed. As explained in Defendants' Memorandum in Support of Motion to Dismiss [see image at Docket Entry No. 12 whether GAP complies with HUD's regulations. The agency cannot violate the requirements of the APA if it never had the opportunity to address the issue in the first instance. Sims v. Apfel, 530 U.S. 103, 109-10 (2000) (citing United States v. L.A. Tucker Truck Lines, 344 U.S. 33, 36 (1952)). The United States Supreme Court has held that courts "should not topple over administrative

decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." L.A. Tucker Truck Lines, 344 U.S. at 37. In fact, requiring issue exhaustion at the administrative level is the "general rule." Sims, 530 U.S. at 109 (citing L.A. Tucker Truck Lines, 344 U.S. at 36-37). Particularly because this matter was already pending before the agency before this suit was filed, the Court should allow the agency to address the issues in the first instance, and, if it does not dismiss the case outright, should hold Plaintiffs' motion for partial summary judgment in abeyance until a decision is made and an appropriate record can be filed.

    **C.**    **Plaintiffs Are Not Entitled to Judgment As a Matter of Law**

        **1. Plaintiffs' Point I Reaches Legal Conclusions Based on a Mischaracterization of HUD Policy and the Program at Issue in this Case.**

Plaintiffs rely on HUD "regulations" that provide that "Federal, State and local Government agencies ... may provide *secondary financing* for the borrower's *entire cash investment.*" Pls.' Mem. at 7. However this policy, as well as any decisions promulgated pursuant to it by HUD, is not applicable here. HUD explicitly treats secondary financing to satisfy the necessary buyer's cash investment separately from gift funds. HUD Handbook 4155.1, Rev. 5, Ch. 1, sec. 5, 1-13 ("Any financing (other than the FHA-insured first mortgage) *that creates a lien against the property* is considered secondary financing *and not a gift . . . .*" (emphasis added)"; PEX. D. The qualifications for an acceptable "outright gift of the cash investment" are described in a separate chapter of the HUD handbook. HUD Handbook 4155.1, Rev. 5, Ch. 2, sec. 3, 2-10(C); PEX D.

The reasoning for treating secondary financing and outright gifts differently is clear based on the different nature of the funding. Secondary financing is secured by the lender by a subordinate lien on the property. Handbook 4155.1, Rev. 5, Ch. 1, sec. 5, 1-13. Once the loan is

2

paid off, the buyer regains the equity in the property and is in the same position had the buyer provided the initial payment for the required cash investment, minus interest. Although proper gift funds would conceivably place the buyer in a better position than financing, receiving an outright payment for the cash investment, there is a greater risk that the seller will ultimately provide the funds for the gift to the "donor" to sell the property, but raise the price of the property to make himself whole. See GAO report at 16, Exhibit A; Concentrate Consulting Group, C-OPC-22550/M0001, "An Examination of Downpayment Gift Programs Administered by Non-Profit Organizations," 2005, Ex. B. (finding that these types of "gifts" resulted in inflated sales prices and inflated mortgages led to an increase in the severity of insurance claims on the FHA Insurance Fund and FHA losses on claims paid on such mortgages). Because of this increased risk, HUD is within its authority to create different schemes for the oversight of gift funds and secondary financing. Treating secondary financing differently from gift funds is, therefore, rational and reasonable, and the agency's choice, which is based on its technical expertise, should not be second-guessed. Citizens to Preserve Overton Park, 401 U.S. at 415-416; see also Motor Vehicle Mfgs. Ass'n v. State Farm Automobile Ins. Co., 463 U.S. 29, 43 (1983) (a court is not to substitute its judgment for that of the agency); see Community Nutrition Institute v. Block, 749 F.2d 50, 54 (D.C. Cir. 1984); Marsh v. Oregon Natural Resources Council, 490 U.S. 360 (1989); National Wildlife Federation v. Browner, 127 F.3d 1126, 1129 (D.C. Cir. 1997) ("The mere fact that an agency offers its interpretation in the course of litigation does not automatically preclude deference to the agency. . . as the Supreme Court has recently affirmed, deference to an interpretation offered in the course of litigation is still proper as long as it reflects the 'agency's fair and considered judgment on the matter.'"); Berlex Laboratories, Inc., v. FDA, 942 F. Supp. 19 (D.D.C. 1996).

Even if the language cited by Plaintiffs did apply here, the D.C. Circuit recently upheld the National Labor Relations Board's interpretation excluding an Indian tribe from exemptions given to "any State or political subdivision thereof." San Manuel Indian Bingo & Casino v. NLRB, 475 F.3d 1306, 1316-17 (D.C. Cir. 2007). "The exception is limited by its terms to *state* governments (and their political subdivisions), and we can hardly call it impermissible for an agency to limit a statutory phrase to its ordinary and plain meaning." Id. "[T]he Board has given the NLRA a natural interpretation that falls within the range of interpretations the NLRA permits, and regardless of whether [the court thinks] the Board's decision wise, [they] are without authority to reject it." Id. at 1318. The language Plaintiffs cite to is similar—except that "political subdivision" is replaced by "local government"—and thus, at a minimum, is a genuine issue of material fact yet to be decided by HUD, and Plaintiffs' motion should be denied. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### 2. Plaintiffs' Second Argument Contains Legal Conclusions Directly at Issue in HUD's Pending Review.

In the portion of Plaintiffs' argument identified by Roman numeral II, Plaintiffs oversimplify the relationships of tribal sovereignty and a tribe's operation as a governmental entity on non-tribal land to the doctrine of tribal immunity when sued by a private entity. As the D.C. Circuit has explained:

> An examination of United States Supreme Court cases shows tribal sovereignty to be at its strongest when explicitly established by a treaty, or when a tribal government acts within the borders of its reservation, in a matter of concern only to members of the tribe. Examples of such intramural matters include regulating the status of tribe members in relation to one another and determining tribe membership. Conversely, **when a tribal government goes beyond matters of internal self-governance and enters into off-reservation business transaction with non-Indians, its claim of sovereignty is at its weakest.** In the latter situation, courts recognize the capacity of a duly established tribal government to act as an unincorporated legal person, engaging in privately negotiated

>contractual affairs with non-Indians, but the tribal government does so subject to generally applicable laws. The primary qualification to this rule is that the tribal government may be immune from suit. Kiowa Tribe v. Mfg. Techs., Inc., 523 U.S. 751, 754 (1998).

San Manuel Indian Bingo & Casino, 475 F.3d at 1312-1313 (emphasis added).  Moreover, "a general statute in terms applying to all persons includes Indians and their property interests." Federal Power Comm'n v. Tuscarora Indian Nation, 362 U.S. 99, 116 (1960).  Even if Plaintiffs are ultimately found to be a "governmental agency" for the purposes of their administering their program pursuant to HUD Handbook 4155.1, Rev 5, ch. 2, sec. 3, 2-10(C), they are still subject to the limitations that any other gift donor would be subject to under that section.  Whether or not Plaintiffs' program, as described to HUD, complies with the policy set forth in the Handbook and does not fall within any of its exclusions, is a genuine issue of material fact necessarily at issue in this case since HUD's review is not yet complete.

Even when it is complete, HUD's decision will be subject to considerable deference.  Not only is the agency action entitled to a highly deferential standard, but the Court must confer "substantial deference" upon "an agency's construction of its own regulations." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); Lyng v. Payne, 476 U.S. 926, 939 (1986); see also American Train Dispatchers Ass'n v. ICC, 54 F.3d 842, 847 (D.C. Cir. 1995); Randolph-Sheppard Vendors of Am. v. Weinberger, 795 F.2d 90, 111 (D.C. Cir. 1986) ("The scope of the statute and the regulations promulgated thereunder should, in the first instance, be one for the agency charged with its administration.").  The Court's role is not to ensure that the agency's application of its regulations to the facts is the most natural or logical, the only possible interpretation, or the one that the Court would have adopted in the first instance, but only that it is reasonable and consistent with the regulations. National Trust for Historic Preservation v. Dole, 828 F.2d 776, 782 (D.C. Cir. 1987); Belco Petroleum Corp. v. FERC, 589 F.2d 680, 685

(D.C. Cir. 1978). The agency is entitled to even greater deference in interpreting its regulations than in reading its statutory mandate. Wyoming Outdoor Council v. United States Forest Service, 165 F.3d 43, 52 (D.C. Cir. 1998); Puerto Rico Elec. Auth. v. FERC, 848 F.2d 243, 249 (D.C. Cir. 1988); see also Lyng, 476 U.S. at 939. Here, given the transparent concerns relating to insuring mortgages obtained by people who finance all or the bulk of the downpayment with funds received from entities that receive equivalent funds from the sellers, it would not be unreasonable for the agency to place limits on such creative arrangements to limit conflicts and ensure that the "gifts" are appropriately made. Ironically, Plaintiffs' lawsuit is premised upon the notion that their intentions are being threatened or compromised by HUD's impending regulation, but if the downpayment assistance programs were truly gifts, Plaintiffs could not be financially harmed by any restrictions placed on the program.

### 3. Plaintiffs' Reliance on Indian Law Canons of Construction is Misplaced

The Indian law canons of construction construing statutes liberally in favor of Indians are inapplicable here because this is not an Indian law case. The cases to which Plaintiffs cite, as well as other cases applied this canon to statutes and treaties directly relating to Indian tribes, members, or land. County of Yakima v. Confederated Tribe & Bands of the Yakima Indian Nation, 502 U.S. 251, 269 (1992) (General Allotment Act of 1887, 25 U.S.C. § 331); County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 247 (1985) ("treaties should be construed liberally in favor of the Indians"); White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 143-144 (1980) (discussing federal preemption of state law imposing taxes on activity exclusive within reservation boundaries); McClanahan v. Arizona State Tax Comm'n, 411 U.S. 164, 174 (canon applied in "interpreting Indian treaties"); Winters v. United States, 207 U.S. 564, 576-577 (1908) (by a rule of interpretation of *agreements and treaties with the Indians*, ambiguities

occurring will be resolved from the standpoint of the Indians." (emphasis added)).  Moreover, the Supreme Court has indicated that the canon is weaker than its previous decisions have been interpreted, especially when interpreting statutes as opposed to treaties.  <u>Chickasaw Nation v. United States</u>, 534 U.S. 84, 95 (2001) ("[T]he canon that assumes Congress intends its statutes to benefit the tribes is offset by the canon that warns us against interpreting federal statutes as providing tax exemptions unless those exemptions are clearly expressed.  Nor can one say that the pro-Indian canon is inevitably stronger—particularly where the interpretation of a congressional statute rather than an Indian treaty is at issue." (citations omitted) (emphasis added)).

Nonetheless, all statutes and regulations involved in this matter are of general applicability and were neither created for the benefit of Indian tribes nor do they have an exlusive effect on Indian tribes, and are therefore, to the extent they are ambiguous, not entitled to a reading in favor of Plaintiffs merely because of their status as an Indian tribe. <u>San Manuel Indian Bingo & Casino</u>, 475 F. 3d at 1312 ("Each of the cases petitioners cite in support of the principle that statutory ambiguities must be construed in favor of Indians (as well as the cases we have found supporting the principle) involved construction of a statute or a provision of a statute Congress enacted specifically for the benefit of Indians or for the regulation of Indian affairs. We have found no case in which the Supreme Court applied this principle of pro-Indian construction when resolving an ambiguity in a statute of general application.").

## CONCLUSION

For all of these reasons, Plaintiffs' motion for partial summary judgment should be denied, and this case should be dismissed.  In the alternative, if this lawsuit should proceed, the

Court should hold Plaintiffs' motion in abeyance until after it receives a properly certified and complete administrative record from the agency.

     Dated:  September 26, 2007.

                       Respectfully submitted,

                       _____
                       JEFFREY A. TAYLOR, D.C. Bar # 498610
                       United States Attorney

                       /s/_____
                       RUDOLPH CONTRERAS, D.C. BAR # 434122
                       Assistant United States Attorney

                       /s/_____
                       JANE M. LYONS, D.C. Bar # 451737
                       Assistant United States Attorney
                       555 4th Street, N.W. – Room E4822
                       Washington, D.C. 20530
                       (202) 514-7161
                       (202) 514-8780 (facsimile)

Of Counsel:
Louis J. Giola, Department of Housing and Urban Development

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PENOBSCOT INDIAN NATION, <br> PENOBSCOT INDIAN NATION ENTERPRISES, and <br> GLOBAL DIRECT SALES, LLC, <br> <br> Plaintiffs, <br> <br> v. <br> <br> UNITED STATES DEPARTMENT OF HOUSING AND <br> URBAN DEVELOPMENT, *et al.*, <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 07-1282 (PLF) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF
MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Civil Rule 56.1, defendants United States Department of Housing and Urban Development ("HUD"), Alphonso Jackson, Secretary of Housing and Urban Development, Roy A. Bernardi, Deputy Secretary of Housing and Urban Development, and Brian Montgomery, Assistant Secretary of Housing and Urban Development and Commissioner of the Federal Housing Administration hereby respond to certain statements contained in Plaintiffs' Statement of Material Facts as to Which There is No Genuine Issue. Because HUD's contention is that there has been no final agency action here, and thus HUD's review of plaintiffs program is not yet complete, HUD disputes that there is no genuine issue as to many of Plaintiffs' alleged material facts.

1-3. Because HUD's review of Plaintiffs' program is not yet complete, HUD can neither confirm nor deny any statements regarding Plaintiffs status under federal, state, or local laws.

4-9. Because HUD's review of Plaintiffs' program is not yet complete, HUD can neither confirm nor deny any statements regarding internal resolutions or agreements among the Plaintiffs or regarding the purposes or operations of Plaintiffs' programs.

10. Because HUD's review of Plaintiffs' program is not yet complete, HUD disputes that there is no genuine issue of fact regarding the operations of GAP.

11. The letter referenced, which found the Nehemiah program was compliant with HUD regulations and guidance, may no longer be accurate in light of subsequent Revenue Ruling 2006-27. This ruling removed the gift income exclusion under §102 of the Internal Revenue Code for payments received by homebuyers from charitable organizations receiving a payment from the home seller that directly correlates to the amount of the down payment assistance. Rev. Rul. 2006-27. The impact of the Revenue Ruling presents a mixed question of law and fact.

12. Because HUD's review of plaintiffs program is not yet complete, HUD disputes that there is no genuine issue of fact regarding the operations of GAP.

13. Because HUD's review of Plaintiffs' program is not yet complete, HUD can neither confirm nor deny any statements regarding Plaintiffs' internal organization. In addition, any future determination of fact should be based exclusively on information made available to the agency through the administrative process, and not in litigation.

14-15. Issues of funding for Plaintiffs' downpayment assistance program are among matters directly at issue in HUD's review and are, thus, genuine issues of material fact that are in dispute here. PEX K ("We are particularly interested in the ultimate source of downpayment funds, how those funds are made available to home purchasers, and whether there are any fees or contractual arrangements among the parties providing or receiving these funds. We also seek

information about the operating authorities of the Penobscot Indian Nation, Penobscot Indian Nation Enterprises, Global Direct Sales, LLC, and [the Grant America Program]."); PEX O.

16. Because HUD's review of plaintiffs program is not yet complete, HUD disputes that there is no genuine issue of fact regarding the operations of GAP or what would constitute "similarly operated charitable DPA programs." The existing record contains no information on any other DPA programs with which to compare GAP or to support Plaintiffs' conclusion.

18-20. It is unclear from Mr. Heist's testimony whether the 25% figure he cited referred to all gifted downpayment assistance or just seller-funded downpayment assistance. Homeowner Downpayment Assistance Programs and Related Issues: Hearing Before the House Subcommittee on Housing and Community Opportunity, Committee on Financial Services, 110th Cong. (June 22, 2007) (statement of James Heist, Assistant Inspector General for Audit, U.S. Dep't of Hous. and Urban Dev.) HUD continues its long-standing policy of permitting FHA borrowers to rely on downpayment assistance from family members, employers, governmental entities, or charitable nonprofits, in the Proposed Rule. Id. (statement of Margaret Burns, Director, Office of Single Family Housing Program Development, Office of Housing, U.S. Dep't of Hous. and Urban Dev.). The Rule clarifies that the funds cannot be derived from sellers or any other party that stands to benefit financially from the purchase transaction. Id.

21. Although Plaintiffs' statement is correct, the issuance of a final rule is still pending. Inasmuch as there were approximately 7,000 comments received with regard to the proposed rule, FHA is still developing the final rule and has not made a final decision with regard to tribal governments. 72 Fed. Reg. 37500 (July 10, 2007).

22.     Plaintiffs' statement is not a material fact as the appropriations bill has not been enacted and no similar provision was inserted into the Senate version. The Court can take judicial notice of legislative acts and omissions.

23.     Disputed to the extent that HUD Handbooks are not regulations.

24.     Undisputed. However, the sentence Plaintiffs cite must be read in conjunction with the rest of the paragraph, which sets out the qualifications and restrictions for such gifts. PEX. D.

25-27.  Plaintiffs' statements are not material to the issues in this lawsuit. Plaintiffs' statements refer to regulations and Mortgagee Letters which discuss secondary financing programs. Plaintiffs' program here is a gift or grant program. Comp. ¶¶ 1 & 19; Pltfs. Memorandum in Support of Motion for Summary Judgment pp. 2 & 4-5, Pltfs. Statement of Material Facts ¶ 6, Pltf. Ex. B. Secondary financing and gifts or grants are not synonymous and are treated separately by HUD. "Any financing (other than the FHA-insured first mortgage) *that creates a lien against the property* is considered secondary financing *and not a gift* . . . ." HUD Handbook 4155.1, Rev. 5, Ch. 1, sec. 5, 1-13 (emphasis added); Pltf. Ex. D. Gift funds are discussed in a different chapter of the Handbook. HUD Handbook 4155.1, Rev. 5, Ch. 2, sec. 3, 2-10(C); Pltf. Ex. D.

29.     Plaintiffs' statement at ¶ 29 is incorrect (and may merely contain a typographical error) in that the HUD's Handbook Plaintiffs cite does *not* contain a definition for Indian Area. Defendants note, however, that HUD's Indian Housing Management Guidebook defines Indian Area as "the area within which an Indian Housing Authority is authorized to provide low-income housing." HUD Guidebook 7460.1G, Ch. 7, sec. 7.9.

30. Plaintiffs' statement is not material to the issues in this lawsuit. Plaintiffs' reference the Native American Housing Assistance and Self-Determination Act of 1996, which provides for entirely different programs and regulations than those at issue here and is wholly irrelevant. 25 U.S.C. §§ 4101 *et. seq.*

31. HUD has yet to issue any final guidance on GAP's compliance with HUD policy. There is a genuine issue of fact concerning exactly what statements were made by HUD employees, insofar as they are even relevant to this matter.

33. HUD can neither confirm nor deny Plaintiffs' intent in meeting with HUD nor what information they were able to provide.

34. HUD's inquiries at the meeting of June 25, 2007 were not limited to PIN's ability to operate beyond its tribal territory and tribal members. Other issues raised included inquiries into the flow of funding for the GAP program. PEX K.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/_____
JANE M. LYONS, D.C. Bar # 451737
Assistant United States Attorney
555 4th Street, N.W. – Room E4822
Washington, D.C. 20530
(202) 514-7161
(202) 514-8780 (facsimile)

Of Counsel:
Louis J. Gioia, Department of Housing and Urban Development