# EXHIBIT A

LAW OFFICES

## KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.

PAUL B. GOLDHAMER*
BARRY S. KANTROWITZ†
GARY S. GRAIFMAN*
RANDY J. PERLMUTTER*

WILLIAM T. SCHIFFMAN*
REGINALD H. RUTISHAUSER*
JOHN M. CHAKAN*
RISA K. JAMESON**
MICHAEL L. BRAUNSTEIN*

OF COUNSEL
SHARON M. KANTROWITZ*
STEVEN B. ROTHSCHILD**

* N.Y. & N.J. BAR
† N.Y., N.J. & FLA. BAR
** N.Y. BAR ONLY

747 CHESTNUT RIDGE ROAD · SUITE 200
CHESTNUT RIDGE, NEW YORK 10977-6216

(845) 356-2570
FAX # (845) 356-4335
www.kgglaw.com

November 21, 2007

AFFILIATE
KANTROWITZ, GOLDHAMER & GRAIFMAN
NEW JERSEY
210 SUMMIT AVE.
MONTVALE, N.J. 07645
(201) 391-7000
FAX # (201) 307-1086

**BY EMAIL & REGULAR MAIL**

Christopher R. Hall, Esq.
U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Avenue, NW
Room 7224
Washington, DC 20530

        Re:    The Penobscot Indian Nation et al. v. U.S. Department of
               Housing and Urban Development et al.

Dear Mr. Hall:

        As you are aware, during the preliminary injunction hearing Judge Friedman strongly
suggested that we attempt to resolve the plaintiffs' initial summary judgment motion and HUD's
initial motion to dismiss by stipulation.

        As HUD now concedes that tribal governments are an appropriate source of
downpayment assistance, HUD repeatedly interfered with the operation of the plaintiffs' DPA
program, the Grant America Program™ "GAP") and continued to interfere with GAP after the
publishing of the new rule, there can be little question that a declaration of GAP's compliance is
appropriate.  I have enclosed emails giving specific information regarding HUD's interference
with GAP.   Additionally, you were personally involved with rectifying HUD's interference
(Incident No. 07019-001829) with a GAP closing which occurred on October 26, 2007, after the
new rule published and before its effective date.

        Further, on October 9, 2007, pursuant to Fed. R. Civ. P. 15(a), the plaintiffs amended
their complaint as of right.  In light of the plaintiffs' amended complaint, the defendants' original
motion to dismiss is moot, as the amended complaint supersedes the original complaint. Adams
v. Quattlebaum, 219 F.R.D. 195 (D.D.C. 2004).  Further, HUD's successive pre-answer motions'
to dismiss are improper. See Manns v. City of Atlanta, 2006 WL 2466836, *3 (N.D.Ga. 2006).

Christopher R. Hall, Esq.
November 21, 2007
Page 2


Accordingly, a stipulation that GAP complies with HUD regulations and guidance pertaining to the source of the of funds for a borrowers' downpayment, not including the currently contested rule and that HUD's original motion to dismiss is withdrawn, as moot and superseded by the Amended Complaint and second motion to dismiss, is appropriate.

If you have any questions, or would like to discuss this matter, please feel free to contact the undersigned.

<div style="margin-left: 40%;">

**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**

By:

Michael L. Braunstein

</div>

Enclosures
cc:    Christopher Russell, Director (via email)
       Gary E. Mason, Esq. (via email)

## Michael Braunstein

| | |
|---|---|
| **From:** | Chris Russell [crussell@globaldirectsales.com] |
| **Sent:** | Wednesday, October 24, 2007 9:46 AM |
| **To:** | mbraunstein@kgglaw.com |
| **Subject:** | FW: Loan Closing Friday 10/26 - Problems with Flagstar Bank Underwriting Dept. |
| **Importance:** | High |

Can this be resolved before Friday?

Chris

**From:** Peggy Stanley [mailto:stanley@fhadpa.com]
**Sent:** Wednesday, October 24, 2007 9:39 AM
**To:** CRussell@GlobalDirectSales.com
**Subject:** Loan Closing Friday 10/26 - Problems with Flagstar Bank Underwriting Dept.
**Importance:** High

Chris:

Our client, Debi Clark of Lake Pacor Home Mortgage in Michigan called me on Monday to say that Flagstar Underwriting Dept. wanted documentation stating that we were "approved" by FHA. At Debi's suggestion, I responded directly to the Flagstar underwriting officer (Angela Piner) by e-mailing her copies of the documents that always placate other underwriting officers who ask the same question. (See documents attached to this message.) This woman will not be placated, however.

I just forwarded you a copy of the underwriting officer's response to my e-mail and you will see that she suggests that we call the FHA. Meanwhile, our client called me and left a message asking me to call the FHA to "explain to them" saying that I should refer to "Incident No. 07019-001829." The phone numbers she left me for the FHA are: (202)708-2121 or (800) CALL FHA.

I discussed this matter in detail with Scott and he asked me to forward the matter to you. Needless to say, I haven't called the FHA, and at Scott's suggestion I e-mailed the underwriting officer this morning to ask her to tell us exactly what the FHA told her.

Peg

Peggy Stanley
Account Executive
Grant America Program
Global Direct Sales
7824 Cessna Avenue
Gaithersburg, MD 20879
PH: (240)780-3333 - Direct
FX: (301)869-4909
stanley@fhadpa.com

**Total Control Panel**                                                                 Login
To: **mbraunstein@kgglaw.com**          **Block** messages from this sender (blacklist)
From: **crussell@globaldirectsales.com**   **Remove** this sender from my whitelist

11/21/2007

05/31/07  THU 09:41 FAX

## Scott Nash

| | |
|---|---|
| **From:** | Roberts, Elaine A [Elaine.A.Roberts@hud.gov] |
| **Sent:** | Wednesday, May 30, 2007 3:21 PM |
| **To:** | clhauver@yahoo.com |
| **Subject:** | FW: Penobscot Native American Tribe |

Here is what out legal dept. said

The present status is that HQ Housing has instructed the HOCs in the interim that this program is not an acceptable source of down payment gift funds although the program is under review in HQ.  This program will probably be killed by the new proposed reg published on 5/11 for comment that will, if adopted as written, prohibit any gift funds from coming from the seller "before during or after the closing."

**From:** cija hauver [mailto:clhauver@yahoo.com]
**Sent:** Wednesday, May 30, 2007 10:39 AM
**To:** Roberts, Elaine A
**Subject:** Penobscot Native American Tribe

Elaine-

THanks for talking with me last week about all the different issues going on  right now.

I have received email solicitations from the "GAP" program to start using their down payment assistance program- this is the program provided by the Penobscot Native American tribe.  Their argument is somewhat convincing when talking about the non-profit DAP programs.

Do you think it would be ok for our mortgage company to try them out?  Does HUD have an issue with them or do they have a formal stance on the program?  From our last conversation it sounded like the jury was still out on these guys.

Chris

1

At the request of my employer I called HUD and was in contact with HUD - Philadelphia since we have 3 - 4 loans ready to close with the Grant America Program. HUD - Philadelphia indicated that at the present moment the program is not acceptable to HUD and the program is under review. I just want you to know the issues that are out there with your loan program.
Glenn

_____

8:00? 8:25? 8:40? Find a flick <http://tools.search.yahoo.com/shortcuts/?fr=oni_on_mail&#news> in no time with theYahoo! Search movie showtime shortcut. <http://tools.search.yahoo.com/shortcuts/?fr=oni_on_mail&#news>

_____ NOD32 2334 (20070615) Information _____

This message was checked by NOD32 antivirus system.
http://www.eset.com

**Total Control Panel**                                                    Login
To: **mbraunstein@kgglaw.com**       **Block** messages from this sender (blacklist)
From: **russell@dpfunder.com**       **Remove** this sender from my whitelist

*You received this message because the sender is on your whitelist.*

6/15/2007

All –

I spoke with Keith Root at Southern Star mortgage. His underwriter called HUD in Philly regarding GAP acceptance and was told that "at this time HUD is not accepting GAP and that the program is currently under review." Keith is pissed that his deal fell apart.

Barnett Nezi is the HUD underwriter that made the statement to Glen Michaels at Southern Start Mortgage.

- John

## John D. Wyatt, CMB | Grant America Program | www.FHADPA.com
☎office: 202.657.0099 | ☎fax: 202.521.9507 | ✉email: jwyatt@fhadpa.com

This e-mail message, including any attachments, may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution, or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

_____ NOD32 2334 (20070615) Information _____

This message was checked by NOD32 antivirus system.
http://www.eset.com

**Total Control Panel**                                                                    Login
To: **mbraunstein@kgglaw.com**          **Block** messages from this sender (blacklist)
From: **crussell@globaldirectsales.com**   **Remove** this sender from my whitelist

*You received this message because the sender is on your whitelist.*

6/15/2007

# EXHIBIT A

LAW OFFICES

## KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.

747 CHESTNUT RIDGE ROAD · SUITE 200

CHESTNUT RIDGE, NEW YORK 10977-6216

(845) 356-2570

FAX # (845) 356-4335

www.kgglaw.com

November 21, 2007

PAUL B. GOLDHAMER*
BARRY S. KANTROWITZ†
GARY S. GRAIFMAN*
RANDY J. PERLMUTTER*

WILLIAM T. SCHIFFMAN*
REGINALD H. RUTISHAUSER*
JOHN M. CHAKAN*
RISA K. JAMESON**
MICHAEL L. BRAUNSTEIN*

OF COUNSEL
SHARON M. KANTROWITZ*
STEVEN B. ROTHSCHILD**

* N.Y. & N.J. BAR
† N.Y., N.J. & FLA. BAR
** N.Y. BAR ONLY

AFFILIATE

KANTROWITZ, GOLDHAMER & GRAIFMAN

NEW JERSEY

210 SUMMIT AVE.

MONTVALE, N.J. 07645

(201) 391-7000

FAX # (201) 307-1086

## BY EMAIL & REGULAR MAIL

Christopher R. Hall, Esq.
U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Avenue, NW
Room 7224
Washington, DC 20530

Re:    The Penobscot Indian Nation et al. v. U.S. Department of
Housing and Urban Development et al.

Dear Mr. Hall:

As you are aware, during the preliminary injunction hearing Judge Friedman strongly suggested that we attempt to resolve the plaintiffs' initial summary judgment motion and HUD's initial motion to dismiss by stipulation.

As HUD now concedes that tribal governments are an appropriate source of downpayment assistance, HUD repeatedly interfered with the operation of the plaintiffs' DPA program, the Grant America Program™ "GAP") and continued to interfere with GAP after the publishing of the new rule, there can be little question that a declaration of GAP's compliance is appropriate. I have enclosed emails giving specific information regarding HUD's interference with GAP. Additionally, you were personally involved with rectifying HUD's interference (Incident No. 07019-001829) with a GAP closing which occurred on October 26, 2007, after the new rule published and before its effective date.

Further, on October 9, 2007, pursuant to Fed. R. Civ. P. 15(a), the plaintiffs amended their complaint as of right. In light of the plaintiffs' amended complaint, the defendants' original motion to dismiss is moot, as the amended complaint supersedes the original complaint. Adams v. Quattlebaum, 219 F.R.D. 195 (D.D.C. 2004). Further, HUD's successive pre-answer motions' to dismiss are improper. See Manns v. City of Atlanta, 2006 WL 2466836, *3 (N.D.Ga. 2006).

Christopher R. Hall, Esq.
November 21, 2007
Page 2


    Accordingly, a stipulation that GAP complies with HUD regulations and guidance pertaining to the source of the of funds for a borrowers' downpayment, not including the currently contested rule and that HUD's original motion to dismiss is withdrawn, as moot and superseded by the Amended Complaint and second motion to dismiss, is appropriate.

    If you have any questions, or would like to discuss this matter, please feel free to contact the undersigned.

                **KANTROWITZ, GOLDHAMER**
                  **& GRAIFMAN, P.C.**

By:

                   Michael L. Braunstein

Enclosures
cc:     Christopher Russell, Director (via email)
        Gary E. Mason, Esq. (via email)

## Michael Braunstein

| | |
|---|---|
| **From:** | Chris Russell [crussell@globaldirectsales.com] |
| **Sent:** | Wednesday, October 24, 2007 9:46 AM |
| **To:** | mbraunstein@kgglaw.com |
| **Subject:** | FW: Loan Closing Friday 10/26 - Problems with Flagstar Bank Underwriting Dept. |
| **Importance:** | High |

Can this be resolved before Friday?

Chris

**From:** Peggy Stanley [mailto:stanley@fhadpa.com]
**Sent:** Wednesday, October 24, 2007 9:39 AM
**To:** CRussell@GlobalDirectSales.com
**Subject:** Loan Closing Friday 10/26 - Problems with Flagstar Bank Underwriting Dept.
**Importance:** High

Chris:

Our client, Debi Clark of Lake Pacor Home Mortgage in Michigan called me on Monday to say that Flagstar Underwriting Dept. wanted documentation stating that we were "approved" by FHA. At Debi's suggestion, I responded directly to the Flagstar underwriting officer (Angela Piner) by e-mailing her copies of the documents that always placate other underwriting officers who ask the same question. (See documents attached to this message.) This woman will not be placated, however.

I just forwarded you a copy of the underwriting officer's response to my e-mail and you will see that she suggests that we call the FHA. Meanwhile, our client called me and left a message asking me to call the FHA to "explain to them" saying that I should refer to "Incident No. 07019-001829." The phone numbers she left me for the FHA are: (202)708-2121 or (800) CALL FHA.

I discussed this matter in detail with Scott and he asked me to forward the matter to you. Needless to say, I haven't called the FHA, and at Scott's suggestion I e-mailed the underwriting officer this morning to ask her to tell us exactly what the FHA told her.

Peg

Peggy Stanley
Account Executive
Grant America Program
Global Direct Sales
7824 Cessna Avenue
Gaithersburg, MD  20879
PH: (240)780-3333 - Direct
FX: (301)869-4909
stanley@fhadpa.com

**Total Control Panel**                                                                 Login
To: **mbraunstein@kgglaw.com**          **Block** messages from this sender (blacklist)
From: **crussell@globaldirectsales.com**    **Remove** this sender from my whitelist

11/21/2007

☑002

## Scott Nash

| | |
|---|---|
| **From:** | Roberts, Elaine A [Elaine.A.Roberts@hud.gov] |
| **Sent:** | Wednesday, May 30, 2007 3:21 PM |
| **To:** | clhauver@yahoo.com |
| **Subject:** | FW: Penobscot Native American Tribe |

Here is what out legal dept. said

The present status is that HQ Housing has instructed the HOCs in the interim that this program is not an acceptable source of down payment gift funds although the program is under review in HQ. This program will probably be killed by the new proposed reg published on 5/11 for comment that will, if adopted as written, prohibit any gift funds from coming from the seller "before during or after the closing."

**From:** cija hauver [mailto:clhauver@yahoo.com]
**Sent:** Wednesday, May 30, 2007 10:39 AM
**To:** Roberts, Elaine A
**Subject:** Penobscot Native American Tribe

Elaine-

THanks for talking with me last week about all the different issues going on right now.

I have received email solicitations from the "GAP" program to start using their down payment assistance program- this is the program provided by the Penobscot Native American tribe. Their argument is somewhat convincing when talking about the non-profit DAP programs.

Do you think it would be ok for our mortgage company to try them out? Does HUD have an issue with them or do they have a formal stance on the program? From our last conversation it sounded like the jury was still out on these guys.

Chris

1

At the request of my employer I called HUD and was in contact with HUD - Philadelphia since we have 3 - 4 loans ready to close with the Grant America Program. HUD - Philadelphia indicated that at the present moment the program is not acceptable to HUD and the program is under review. I just want you to know the issues that are out there with your loan program.

Glenn

_____

8:00? 8:25? 8:40? Find a flick <http://tools.search.yahoo.com/shortcuts/?fr=oni_on_mail&#news> in no time with theYahoo! Search movie showtime shortcut. <http://tools.search.yahoo.com/shortcuts/?fr=oni_on_mail&#news>

_____ NOD32 2334 (20070615) Information _____

This message was checked by NOD32 antivirus system.
http://www.eset.com

**Total Control Panel**                                                                                  Login

To: **mbraunstein@kgglaw.com**          **Block** messages from this sender (blacklist)
From: **russell@dpfunder.com**           **Remove** this sender from my whitelist

*You received this message because the sender is on your whitelist.*

6/15/2007

All –

I spoke with Keith Root at Southern Star mortgage. His underwriter called HUD in Philly regarding GAP acceptance and was told that "at this time HUD is not accepting GAP and that the program is currently under review." Keith is pissed that his deal fell apart.

Barnett Nezi is the HUD underwriter that made the statement to Glen Michaels at Southern Start Mortgage.

- John


## John D. Wyatt, CMB | Grant America Program | www.FHADPA.com

☎office: 202.657.0099 | ☎fax: 202.521.9507 | ✉email: jwyatt@fhadpa.com

This e-mail message, including any attachments, may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution, or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.


_____ NOD32 2334 (20070615) Information _____

This message was checked by NOD32 antivirus system.
http://www.eset.com

| Total Control Panel | | Login |
|---|---|---|
| To: **mbraunstein@kgglaw.com** | **Block** messages from this sender (blacklist) | |
| From: **crussell@globaldirectsales.com** | **Remove** this sender from my whitelist | |

*You received this message because the sender is on your whitelist.*

6/15/2007

# EXHIBIT B



**U.S. Department of Justice**
Civil Division, Federal Programs Branch

**Via First-Class Mail**           **Via Overnight Delivery**
P.O. Box 883, Rm. 920             20 Massachusetts Ave. N.W., Rm. 7128
Washington, DC 20044             Washington, DC 20001

Christopher R. Hall                                    Tel: 202/514-4778
Trial Attorney                                         Fax: 202/616-8470

*Via Electronic Mail*

December 7, 2007

Michael L. Braunstein
Kantrowitz, Goldhamer & Graifman, P.C.
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, NY 10977-6216

      Re:     **Penobscot Indian Nation, et al., v. HUD**, No. 07cv01282 (D.D.C.) (PLF)

Dear Michael:

      This is in response to your letter of November 21, 2007, proposing two stipulations in the above-referenced matter between your clients and the Department of Housing and Urban Development ("HUD").

      First, you propose that the parties stipulate that Penobscot Indian Nation's down-payment assistance program, which you identify as the "Grant America Program" or "GAP," complies with HUD's policy governing permissible sources of down-payment assistance for home purchase loans insured by the Federal Housing Administration ("FHA"). This proposed stipulation would not include the regulation published at 72 Fed. Reg. 56,002 (Oct. 1, 2007) that is being challenged in this matter, but rather the policy in effect prior to the effective date of the challenged regulation (and in effect during the pendency of this action as a result of the preliminary injunction entered by the Court on October 31, 2007).

      In light of the injunction, the current policy governing permissible sources of down-payment assistance for FHA-insured home purchase loans can be found at ¶ 2-10.C of HUD Handbook 4155.1, Rev 5, "Mortgage Credit Analysis for Mortgage Insurance, One to Four Family Properties." Paragraph 2-10.C states in relevant part:

> Gift Funds. An outright gift of the cash investment is acceptable if the donor is the borrower's relative, the borrower's employer or labor union, a charitable organization, a governmental agency or public entity that has a program to provide homeownership assistance to low- and moderate-income families or first-time homebuyers, or a close friend with a clearly defined and documented interest in the borrower. The gift donor may not be a person or entity with an interest in the sale of the property, such as the seller, real estate agent or broker, builder, or any entity associated with them.

Michael L. Braunstein
December 7, 2007
Page 2

The parameters of the policy are clear, and entities should be able to determine whether or not they fall within the scope of the policy. For that reason, HUD declines to enter this requested stipulation.

Second, you propose that the parties stipulate that HUD's original motion to dismiss in this matter, filed September 26, 2007, be withdrawn as superceded by your clients' Amended Complaint, filed October 9, 2007, and HUD's second motion to dismiss, filed November 16, 2007. Contrary to your assertion, certain of the arguments raised in our original motion to dismiss continue to apply to your amended complaint. However, in the interest of streamlining proceedings, and in light of the Court's minute order of November 9, 2007, postponing our obligation to substantively address the non-Final Rule claims in the amended complaint, we are willing to withdraw the original motion to dismiss without prejudice. Such a withdrawal is contingent upon your agreement to withdraw without prejudice Plaintiffs' original motion for summary judgment, filed August 10, 2007, as the reasons you cite supporting withdrawal of our motion to dismiss apply equally to Plaintiffs' original motion for summary judgment.

If you have any questions, please do not hesitate to contact me at (202) 514-4778.

Sincerely,

*/s/ Christopher R. Hall*
Christopher R. Hall

# EXHIBIT C

LAW OFFICES

# KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.

PAUL B. GOLDHAMER\*
BARRY S. KANTROWITZ†
GARY S. GRAIFMAN\*
RANDY J. PERLMUTTER\*

WILLIAM T. SCHIFFMAN\*
REGINALD H. RUTISHAUSER\*
JOHN M. CHAKAN\*
RISA K. JAMESON\*\*
MICHAEL L. BRAUNSTEIN\*

OF COUNSEL
SHARON M. KANTROWITZ\*
STEVEN B. ROTHSCHILD\*\*

\*  N.Y. & N.J. BAR
†  N.Y., N.J. & FLA. BAR
\*\* N.Y. BAR ONLY

747 CHESTNUT RIDGE ROAD · SUITE 200
CHESTNUT RIDGE, NEW YORK 10977-6216

(845) 356-2570
FAX # (845) 356-4335
www.kgglaw.com

AFFILIATE

KANTROWITZ, GOLDHAMER & GRAIFMAN
NEW JERSEY
210 SUMMIT AVE.
MONTVALE, N.J. 07645
(201) 391-7000
FAX # (201) 307-1086

January 2, 2008

**BY EMAIL & REGULAR MAIL**

Christopher R. Hall, Esq.
U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Avenue, NW
Room 7224
Washington, DC 20530

> Re:    The Penobscot Indian Nation et al. v. U.S. Department of
> Housing and Urban Development et al.

Dear Mr. Hall:

I write in response to your December 7, 2007 letter.  I have discussed your proposal with my clients and hereby reject the same.

The plaintiffs' proposed resolving their initial summary judgment motion and HUD's motion to dismiss the original complaint via a stipulation that: 1) GAP complies with HUD regulations and guidance pertaining to the source of the of funds for a borrowers' downpayment, not including the currently contested rule; and 2) HUD's original motion to dismiss is withdrawn without prejudice, as moot and superseded by the Amended Complaint and HUD's second motion to dismiss.

Despite HUD's repeated concessions that tribal governments are an appropriate source of downpayment assistance, HUD has repeatedly interfered with the operation of GAP.  Since HUD has continued to interfere with GAP after the publishing of the new rule, there can be little question that a declaration of GAP's compliance with HUD regulations, excluding the currently contested rule, is appropriate.  HUD's purported reason for refusing to stipulate to GAP compliance, that "the parameters of the policy are clear" and "entities should be able to determine whether or not they fall within the scope of the policy" is disingenuous.  You have been provided with multiple emails demonstrating HUD's inability to correctly apply this "clear" policy, always to my clients' detriment.  Additionally, you have first hand knowledge (the October 26th closing - Incident No. 07019-001829) that HUD was unable to correctly make this determination.  For these reasons, HUD's response lacks even a modicum of sincerity.

Christopher R. Hall, Esq.
January 2, 2008
Page 2


HUD's conditioning of the withdrawal of its moot motion to dismiss on the withdrawal of the plaintiffs' summary judgment motion seeking a declaration of GAP compliance is untenable. On October 9, 2007, the plaintiffs amended their complaint as of right. In light of the plaintiffs' amended complaint, the defendants' original motion to dismiss is moot, as the amended complaint supersedes the original complaint. Adams v. Quattlebaum, 219 F.R.D. 195 (D.D.C. 2004). HUD's position makes it clear that it is intent on playing procedural games rather then seek a substantive resolution to this issue. However, HUD gamesmanship has provided the plaintiffs' with the procedural defense that HUD's initial motion to dismiss is moot and second motion to dismiss is an improper successive pre-answer motion to dismiss. See Manns v. City of Atlanta, 2006 WL 2466836, *3 (N.D.Ga. 2006). Your averment that this argument applies to the plaintiffs' summary judgment motions misapplies Manns because the plaintiffs' motions, unlike HUD's motions to dismiss, address separate and distinct issues. Regardless, HUD waived any such argument by failing to raise it in opposing the plaintiffs' summary judgment motions.

I am not optimistic that a resolution on these issues will be reached or that HUD has a good faith interest in any action that does not tortiously interfere with my clients' business. Lastly, as HUD is repeatedly interfering with GAP when the "the parameters of the policy are clear", such interference must be intentional. Based on your December 7, 2007 letter, the plaintiffs' intend to assert a claim regarding HUD's intentional conduct.

If you have any questions, or would like to discuss this matter, please feel free to contact the undersigned.


                          KANTROWITZ, GOLDHAMER
                          & GRAIFMAN, P.C.


                          By:

                               Michael L. Braunstein


cc:     Christopher Russell, Director (via email)
        Gary E. Mason, Esq. (via email)

Not Reported in F.Supp.2d                                                                  Page 1
Not Reported in F.Supp.2d, 2006 WL 2466836 (N.D.Ga.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**

Manns v. City of Atlanta
N.D.Ga.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. Georgia,Atlanta
Division.
Shawn MANNS, Plaintiff,
v.
CITY OF ATLANTA, et al., Defendants.
**Civil Action File No. 1:06-CV-0609-TWT.**

Aug. 23, 2006.

Clarence Victor Long, Office of C. Victor Long,
Atlanta, GA, for Plaintiff.
Cleora S. Anderson, City of Atlanta, Law Depart-
ment, Atlanta, GA, for Defendants.

*OPINION AND ORDER*
THOMAS W. THRASH, JR, District Judge.
**\*1** This is an employment discrimination action. It
is before the Court on the Report and Recommen-
dation [Doc. 18] of the Magistrate Judge recom-
mending that the Defendants' First Motion to Dis-
miss [Doc. 5] be granted as to the Plaintiff's Title
VII claims and denied as to his § 1981 claim; and
that the Defendants' Second Motion to Dismiss
[Doc. 13] be denied. The Court approves and ad-
opts the Report and Recommendation as the judg-
ment of the Court. The Defendants' First Motion to
Dismiss [Doc. 5] is granted as to the Plaintiff's Title
VII claims and denied as to his § 1981 claim. The
Defendants' Second Motion to Dismiss [Doc. 13] is
denied.

SO ORDERED, this 22 day of August, 2006.
JANET F. KING, Magistrate Judge.

*ORDER FOR SERVICE OF REPORT AND RE-
COMMENDATION*

Attached is the report and recommendation of the
United States Magistrate Judge made in this action
in accordance with 28 U.S.C. § 636(b)(1) and this
Court's Local Rules LR 73 and LCrR 58.1. Let the
same be filed and a copy, together with a copy of

this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may
file written objections, if any, to the report and re-
commendation within ten (10) days of the receipt of
this Order. Should objections be filed, they shall
specify with particularity the alleged error or errors
made (including reference by page number to the
transcript if applicable) and shall be served upon
the opposing party. The party filing objections will
be responsible for obtaining and filing the transcript
of any evidentiary hearing for review by the district
court. If no objections are filed, the report and re-
commendation may be adopted as the opinion and
order of the district court and any appellate review
of the factual findings will be limited to a plain er-
ror review. *United States v. Slay,* 714 F.2d 1093
(11th Cir.1983), *cert. denied,*464 U.S. 1050, 104
S.Ct. 729, 79 L.Ed.2d 189 (1984).

The clerk is directed to submit the report and re-
commendation with objections, if any, to the dis-
trict court after expiration of the above time period.

**SO ORDERED,** this 14th day of July, 2006.

*REPORT AND RECOMMENDATION*

Pending before the court are two (2) motions to dis-
miss filed by Defendants City of Atlanta and Den-
nis Rubin. Plaintiff Shawn Manns filed his employ-
ment discrimination complaint [Doc. 1] in this case
on March 15, 2006. Instead of filing an answer, De-
fendants filed a motion [Doc. 5] to dismiss
Plaintiff's complaint on April 14, 2006. On May 31,
2006, Defendants filed a second motion [Doc. 13]
to dismiss. Defendants' motions are filed pursuant
to Federal Rule of Civil Procedure 12(b)(6), which
permits a party to assert by motion the defense of
"failure to state a claim upon which relief can be
granted."Fed.R.Civ.P. 12(b)(6).

"A complaint should not be dismissed for failure to
state a claim unless it appears beyond doubt that the
[non-moving party] can prove no set of facts which
entitle him to relief." FN1 *Hunnings v. Texaco, Inc.,*

Not Reported in F.Supp.2d                                                                Page 2
Not Reported in F.Supp.2d, 2006 WL 2466836 (N.D.Ga.)
**(Cite as: Not Reported in F.Supp.2d)**

29 F.3d 1480, 1484 (11th Cir.1994); *see also Bernard v. Calejo,* 17 F.Supp.2d 1311, 1314 (S.D.Fla.1998) ("Dismissal is justified only when 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (citation omitted)."Moreover, the district court must view the facts presented in the pleadings, and all inferences drawn thereof, in the light most favorable to the non-moving party."*Thunderwave v. Carnival Corporation,* 954 F.Supp. 1562, 1564 (S.D.Fla.1997); *see also Bernard,* 17 F.Supp.2d at 1314 (same). Furthermore, a party " 'need not set forth all the facts upon which the claim is based; rather, a short and plain statement of the claim is sufficient if it gives the [opposing party] fair notice of what the claim is and the grounds upon which it rests.' " *Harris v. Procter & Gamble Cellulose Co.,* 73 F.3d 321, 324 (11th Cir.1996) (quoting *Mann v. Adams Realty Co., Inc.,* 556 F.2d 288, 293 (5th Cir.1977)). And, a plaintiff is not required to "plead law or match facts to every element of a legal theory in [his] complaint." *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1114 (D.C.Cir .2000). The reviewing court must keep in mind that a "motion to dismiss for failure to state a claim upon which relief can be granted merely tests the sufficiency of the complaint; it does not decide the merits of the case." *Wein v. American Huts, Inc.,* 313 F.Supp.2d 1356, 1359 (S.D.Fla.2004) (citing *Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984)).

> FN1."This is especially true in Title VII cases where the court is required to be liberal rather than technical in pleading requirements."*Ferrell v. Busbee,* 91 F.R.D. 225, 230 (N.D.Ga.1981).

**1. Defendants' First Motion to Dismiss**

**\*2** Defendants make three (3) arguments in support of their first Rule 12(b)(6) motion [Doc. 5] to dismiss filed on April 14, 2006. First, Defendants contend that Plaintiff Manns' Title VII claims are barred because Plaintiff failed to file his complaint within ninety (90) days of receiving a right to sue letter from the Equal Employment Opportunity

Commission ("EEOC"), as required by Title VII. [Doc. 5 at 4-6]. Second, Defendants argue that Plaintiff's Title VII claims against Dennis Rubin should be dismissed because individual defendants cannot be held liable under Title VII. [Doc. 5 at 6]. Third, Defendants assert that Plaintiff's claim based on 42 U .S.C. § 1983 must be dismissed because "a Section 1983 claim cannot stand without Plaintiff pleading some cognizable underlying federal violation."[Doc. 5 at 7].

Defendants' first two (2) arguments are persuasive, and Plaintiff acknowledges that his Title VII claims must be dismissed. Title VII provides that "within ninety days after the giving of such notice [of dismissal of the charge] a civil action may be brought against the respondent named in the charge ... by the person claiming to be aggrieved...."42 U.S.C. § 2000e-5(f)(1). In his response to Defendants' motion to dismiss, Plaintiff Manns concedes that his Title VII claims are untimely because he did not bring them within 90) days of receiving his EEOC right to sue letter. [Doc. 12 at 2]. With respect to Plaintiff's Title VII claim against individual Defendant Rubin, it is well settled that "[i]ndividual capacity suits under Title VII are ... inappropriate."*Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991); *see also Smith v. Lomax,* 45 F.3d 402, 403 n. 4 (11th Cir.1995) (individual defendants "cannot be held liable under ... Title VII"). Plaintiff Manns acknowledges that Title VII does not provide him with a cause of action against individual Defendant Rubin. [Doc. 12 at 2]. The court, therefore, **RECOMMENDS** that Defendants' motion [Doc. 5] to dismiss be **GRANTED** on Plaintiff's Title VII claims against both Defendant City of Atlanta and Defendant Rubin and that these claims be dismissed with prejudice.

Defendants' final argument is that Plaintiff Manns' claim based on 42 U.S.C. § 1983[FN2] must be dismissed because Plaintiff has not asserted an underlying constitutional or statutory violation. [Doc. 5 at 7]. Defendants are correct in noting that § 1983 is not a source of substantive federal rights. Rather, the statute "merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Baker v.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2466836 (N.D.Ga.)
**(Cite as: Not Reported in F.Supp.2d)**

_McCollan_, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979) (citation omitted). Defendants contend that "Plaintiff's Complaint fails to tie his Section 1983 Claim to a cognizable constitutional [or statutory] violation." [Doc. 5 at 7]. Defendants are incorrect.

> FN2.Section 1983 provides, in pertinent part: "Every person who, under color of any statute ... of any State ... subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law...."42 U.S.C. § 1983.

Defendants allege that Plaintiff's complaint only asserts claims based on § 1983 and Title VII. But the first paragraph of Plaintiff's complaint states, "The Plaintiff brings this action pursuant to 42 U.S.C. Section 1983 fro [sic] the violation of rights contained in Section 1981...." [Doc. 1 at 1]. The second paragraph of Plaintiff's complaint also mentions "Plaintiff's 42 U.S.C. * [sic] 1981 claims."[_Id._]. Section 1981(a) reads, in pertinent part: "All persons ... shall have the same right in every State ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws ... as is enjoyed by white citizens...."42 U.S.C. § 1981(a). Plaintiff states in his complaint that he is asserting claims for racial discrimination and retaliation. [Doc. 1 at 19-27]. There is no question that Plaintiff's complaint could have been drafted more carefully. However, Plaintiff has given Defendants "fair notice of what the claim is and the grounds upon which it rests," which is all that it is required to satisfy Federal Rule of Civil Procedure 8. _Harris_, 73 F.3d at 324 (internal quotations omitted). For these reasons, the court **RECOMMENDS** that Defendants' motion [Doc. 5] to dismiss filed on April 14, 2006, be **DENIED** on Plaintiff's § 1983/1981 claim.

### 2. Defendants' Second Motion to Dismiss

**\*3** On May 31, 2006, Defendants filed a second motion [Doc. 13] to dismiss Plaintiff's complaint.

Defendants argue in this latest motion to dismiss that "assuming the factual averments in Plaintiff's most recent Complaint are true, as the Court must for purposes of a 12(b)(6) motion, Plaintiff has still failed to state facts sufficient to maintain a Section 1981/1983 discrimination claim as a matter of law."[Doc. 13 at 3]. Defendants contend that: 1) Plaintiff's disparate treatment claim should be dismissed because he has failed to identify a similarly situated comparator; 2) Plaintiff's retaliation claims should be dismissed because he has not asserted that he participated in any statutorily protected conduct; 3) Plaintiff's § 1983 claim against the City of Atlanta should be dismissed because he has not asserted that a City policy caused the alleged discrimination; and 4) Plaintiff's claim against Dennis Rubin is barred on the basis of qualified immunity.FN3[Doc. 13 at 5].

> FN3. Defendants also claim that Plaintiff's disparate impact claim should be dismissed. [Doc. 13 at 4]. However, as Plaintiff notes, he has not asserted a claim for disparate impact. [Doc. 16 at 5].

Plaintiff Manns has filed a response addressing the substance of Defendants' arguments. [Doc. 16]. However, Plaintiff initially argues that the court should not even address the substantive issues raised in Defendants' second motion to dismiss because Defendants did not raise them in their first motion. Plaintiff contends that the filing of successive pre-answer motions to dismiss is improper. [Doc. 16 at 3-4]. The court finds Plaintiff's argument on this issue to be persuasive.

Rule 12(g) provides, "If a party makes a motion under [Rule 12] but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted...." In other words, "Rule 12(g) requires all of the permitted Rule 12(b) defenses to be raised in a single, consolidated motion rather than in multiple or successive motions."_CGHH v. Cesta Punta Deportes,_ 2006 U.S. Dist. LEXIS 15015, * 7 (N.D.Ga., March 31,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006, J. Story). The rule does provide an exception, however, for "a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated."Fed.R.Civ.P. 12(g). The relevant portion of Rule 12(h)(2) provides, "A defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits."Fed.R.Civ.P. 12(h)(2).

In the present case, Rule 12(h)(2) does not apply. Although Defendants have asserted a defense of failure to state a claim as allowed by the rule, this defense has been made pursuant to a Rule 12(b)(6) motion to dismiss. Rule 12(h)(2) only allows a failure to state a claim defense to be made in one of three (3) categories: a Rule 7(a) "pleading"; a motion for judgment on the pleadings provided by Rule 12(c); or at trial on the merits.FN4."Defendants' second 12(b)(6) motion simply does not fall into any of these three categories."*Stoffels v. SBC Communications, Inc.,* 430 F.Supp.2d 642, 2006 WL 1195222, *5 (W.D.Tex., Feb. 3, 2006).

> FN4. Rule 7(a) defines a "pleading" as "a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim ...; a third-party complaint ...; and a third-party answer...."Fed.R.Civ.P. 7(a).

**\*4** As the court in *Stoffels* recently noted, the leading commentators on federal practice and procedure agree that "Rule 12(g) normally bars successive pre-answer motions to dismiss."*Id* . Professors Wright and Miller state, "The right to raise these defenses by preliminary motion is lost when the defendant neglects to consolidate them in his initial motion."5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1385. Similarly, Professor Moore writes, "If omitted from the initial motion, [the defenses listed in Rule 12(h)(2), including failure to state a claim] may not be raised in a successive Rule 12 motion, but may be raised in any Rule 7(a) responsive pleading, in a

Rule 12(c) motion for judgment on the pleadings, or at trial on the merits." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.23.

In summary, "Rule 12(g) specifically prohibits a party that has previously filed a motion to dismiss from filing a second pre-answer motion to dismiss raising an omitted defense that could have been presented in the first motion to dismiss...."*Skrtich v. Thornton,* 280 F.3d 1295, 1306 (11th Cir.2002). While there are exceptions to Rule 12(g)'s prohibition, none of them are applicable in the present case. "Moreover, even this express exemption from the waiver rule does not contemplate or allow the filing of successive Rule 12 motions."*CGHH,*2006 U.S. Dist. LEXIS 15015, * 8 n. 4. The defenses raised by Defendants in their second motion to dismiss could have been raised in their first motion, and Defendants arguments to the contrary are not persuasive. [Doc. 17 at 1-3].

Defendants first contend that their second motion to dismiss for failure to state a claim does not fall within the restriction set forth in Rule 12(g) because the first motion to dismiss addressed the claims as pled by Plaintiff which did not include bringing § 1983 through § 1981. Therefore, they assert that they could not have raised the challenges to the complaint contained in the second motion to dismiss in the first motion to dismiss and should be allowed to do so in a second pre-answer motion. [Doc. 17 at 2]. As already noted, the first paragraph of Plaintiff's complaint states, "The Plaintiff brings this action pursuant to 42 U.S.C. Section 1983 fro [sic] the violation of rights contained in Section 1981...." [Doc. 1 at 1]. The second paragraph of Plaintiff's complaint also mentions "Plaintiff's 42 U.S.C. * [sic] 1981 claims."[*Id.*]. Plaintiff did pled § 1981 as the basis for his § 1983 claims. Defendants were put on notice of the basis of Plaintiff's § 1983 claims and, therefore, should have brought all of their Rule 12(b)(6) claims in the first motion to dismiss.

The second argument that Defendants make focuses on the defense of qualified immunity which is raised in the second motion to dismiss and which

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2466836 (N.D.Ga.)
**(Cite as: Not Reported in F.Supp.2d)**

Defendants assert cannot be waived. [Doc. 17 at 3]. The Defendants misconstrue the effect of Rule 12(g)'s prohibition on successive pre-answer motions. This court has not found that the defense of qualified immunity is waived but has only held that it cannot be asserted in the successive motion to dismiss filed pursuant to Rule 12(b)(6). The facts in the case cited by Defendants, *White v. Bibb County, Georgia,* 28 F.Supp.2d 1374 (M.D.Ga.1998), are inapposite to the facts at issue in this case as that decision addresses the issue of waiver of the defense. *Id.* at 1381-82. Defendant Rubin has not waived that defense, and he may raise it in an appropriate pleading after the answer is filed but not in this successive pre-answer motion to dismiss.

**\*5** Accordingly, the undersigned finds that Defendants' second pre-answer motion [Doc. 13] to dismiss is barred by Rule 12(g). It is **RECOMMENDED** that Defendants' motion [Doc. 13] to dismiss filed on May 31, 2006, be **DENIED.**

### 3. Conclusion

For all the foregoing reasons and cited authority, the undersigned **RECOMMENDS:** that Defendants' first motion [Doc. 5] to dismiss, which was filed on April 14, 2006, be **GRANTED** on Plaintiff's Title VII claims and **DENIED** on Plaintiff's § 1983/1981 claim; and that Defendants' second motion [Doc. 13] to dismiss, which was filed on May 31, 2006, be **DENIED.**

Because no Title VII claims remain in this action, the Clerk is **DIRECTED** to terminate this reference.

N.D.Ga.,2006.
Manns v. City of Atlanta
Not Reported in F.Supp.2d, 2006 WL 2466836 (N.D.Ga.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.